**THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| CWS MARKETING GROUP, INC. | ) | |
| Plaintiff, | ) | No. 06-676C |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**RESPONSE TO INDEPENDENT GOVERNMENT COST ESTIMATE**

Plaintiff CWS Marketing, Inc. ("CWS"), by counsel, respectfully submits this brief response regarding the Independent Government Cost Estimate ("IGCE") provided to the Court on September 28, 2006. Even cursory review confirms that the IGCE is blatantly unreliable on its face and not a reasonable basis for projecting costs associated with the contract at issue awarded by U.S. Customs and Border Protection ("CBP"). The IGCE does not in the least undermine the Plaintiff's likelihood of success on the merits. To the contrary, it confirms that the awardee's low prices can be achieved only if critical, obvious and unavoidable costs are ignored or recklessly understated.

The ICGE was apparently prepared in late December 2005. It bears little relationship to the work that the Agency described in the Solicitation issued March 10, 2006 (with later amendments).

First, the estimate is hopelessly inconsistent with the workload projected in the Solicitation. The statement of work indicated that offerors should anticipate an annual workload of 33,000 seized vehicles to be towed, consigned, received, transferred and processed in the

SEACATS database. (Ex. 2, §B.3.)[1] Yet, the IGCE projects only 1900 cars per year in and out of inventory (800 in, 1100 out). (Tables 5-8 ("Subcontract Cost Model for Vehicles"--2007, 2008, 2009, 2010) and Table 11 ("Workload Projections").) The estimate's underlying assumption is thus off by *31,000 vehicles per year*![2]

The workload projection also assumes a starting inventory of 3054 vehicles. The SOW and later Agency communications were emphatic that there would be no initial inventory. (Ex. 7, Amdmt 3, Responses to Questions 7, 30, 33, 34, 35, 40.)

Second, the IGCE is obviously flawed in terms of the costs projected in several categories. With regard to labor, the IGCE projects a remarkably sparse 13 employees. Even more compelling, however, is the description of projected personnel positions. *(See* IGCE at Table 9 ("Direct Labor"). The IGCE projects *no employees whatsoever* to actually manipulate and maintain the vehicles. There are thus no personnel projected to drive forklifts or otherwise move cars around any storage facility (even the San Diego GOCO, at a minimum), much less secure or maintain them. (*See e.g.,* Ex. 3, Revised SOW at §§ C.10.5, 10.6, 10.7, 10.8, 10.9.) Likewise, there are *no employees whatsoever* projected to handle the extensive SEACATS data entry requirements. (*See id.* at §C.13; Memorandum at 3-5.) Incredibly, only two employees are anticipated to be responsible for marketing and sales of all the seized vehicles. These labor projections are unmistakably in error.

In addition, despite the IGCE's "Summary of Subcontracts," the Agency knows full well that these figures are specious. Just prior to this Court's September 28th hearing, the current

[1] Unless noted otherwise, Exhibit references are to the exhibits submitted with the September 26, 2006 Memorandum of Law In Support of Plaintiff's Motion for Temporary Restraining Order and A Preliminary Injunction ("Memorandum").

[2] The estimator appears to have confused storage inventory with workload. The Solicitation projected 3000 vehicles/year in storage, and the workload projection relates only to projected annual changes in year end storage inventory, not the number of cars towed, processed, etc.

contractor, EG&G, Inc., responded to an urgent inquiry from CBP for data on annual costs for the seized vehicles in Arizona, California, New Mexico and Texas valued at $10,000 or less. The reported costs for fiscal year 2006 were over $16M (exclusive of New Mexico vehicles). (*See* attached email to CBP's Bill Calnan from EG&G).[3] Whatever the Agency may think about how inefficient EG&G may have been in conducting these past operations (setting aside EG&G's high award fees, exceptional evaluations, etc.), it is preposterous to suggest that projected actual costs might somehow be reduced to less than 20% of this historic figure just by running a competition for a new contract.

Third, the IGCE is devoid of *any* projected costs for several obvious and unavoidable categories. No costs are projected for Material or Other Direct Costs (ODCs). Thus, the presumption in the IGCE is that the contractor will incur no costs for, among other things required to perform the solicited work: computers, telephone and data lines, forklifts, company vehicles, vehicle maintenance equipment, office equipment and supplies, furniture, fuel, warehouse supplies, facility security equipment, marketing and sales materials. The government will not provide these items, but the IGCE assumes they will be cost free to the contractor.

A comparably defective cost category projection is the area of lease costs. The IGCE projects no lease costs other than a small home office. The evident presumption was that the contractor would not itself provide any storage facilities, but would rely exclusively on vendors. The premise for such an assumption is a complete mystery, as both the incumbent contractor and the offers by CWS and the contract awardee contemplated contractor-owned storage facilities at key locations (presumably the most cost-effective approach).

[3] Undersigned counsel has been advised that the costs in this communications reflect subcontract/vendor costs only, and are exclusive of all other contractor costs.

There are also no costs reflected in the IGCE for the SEACATS data entry activity, a substantial part of the work under the contract.

Nor are any costs projected for vehicle destruction. The Solicitation instructed offerors to assume the destruction of 3000 vehicles per year, and prescribed specific requirements for that undertaking. (Ex. 3, Amdmt 4, Revised SOW, § C.11.1; Ex. 7, Amdmt 3, Question 43.) Transporting vehicles to a destruction facility or vendor, and paying associated charges, is not the cost-free enterprise that the IGCE predicts.

The IGCE also does not appear to include any costs with respect to three other specific tasks called for by the Solicitation: CLIN 0001C--Receipt and Transfer; CLIN 0001E--Vehicle Identification and Physical Accountability; CLIN 0001L--Monthly management reports. (Ex. 6 at 4, Amdmt 6, Solicitation § B.)

Finally, the IGCE has little to recommend it in terms of credible explanation or back up information. There is no indication that the consultant who prepared the IGCE has any background or experience in this field. The IGCE was reportedly based on a "similar estimate" developed in another competition, which was not provided. There is little or no description of the bases for various estimates or of how various rates were prepared, and no supporting information indicating any reason to consider the estimates valid. Despite repeated reference to a "cost model" that was evidently the source of most figures, there is no description of how it was prepared, how it operates or the information upon which it depends. There is no indication of any market research or data regarding actual vendor costs.

Given its obvious defects and superficial character, it is somewhat remarkable that the Agency puts forward the IGCE as the basis to defend the reasonableness of the "price analysis" it used to validate the awardee's bid. The IGCE lends no credibility to the contract awardee's

proposed price. The only other price cue that the Agency cited was another offeror whose proposal was rated "Marginal." When the actual historical costs of an award winning incumbent reflect dramatically different unavoidable marketplace costs well above the prices proposed, an Agency decision to simply ignore this information was an abuse of the discretion afforded to make reasonable judgments. It was not reasonable to blithely award the contract to an offeror proposing prices that so plainly (like the IGCE) ignored or underestimated the self-evident costs to perform the solicited work.

Dated: September 29, 2006

HOLLAND & KNIGHT LLP
Mark D. Colley
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
(202) 955-3000 – phone
(202) 955-5564 – fax
*Counsel for CWS Marketing Group, Inc.*

Of Counsel:

Kara L. Daniels
Cameron W. Fogle
Allison V. Feierabend
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
(202) 955-3000 – phone
(202) 955-5564 – fax

# ATTACHMENT

-----Original Message-----
**From:** Fox, John
**Sent:** Wednesday, September 27, 2006 7:42 PM
**To:** Bill Calnan (E-mail)
**Cc:** Jolin, Jerry
**Subject:** Vehicle Inventory

Bill

As per our discussion, the vehicle inventory numbers are as follows:

| | |
|---|---|
| Total Program Vehicles As Of 9-22-06 | 10,914 |
| Motor Scooters | 801 |
| Net Vehicles | 10,113 |
| Vehicles in AZ, CA, NM & TX $10K or Less | 8,029 |
| Vehicles in SW States With FMV 10k or Less As % of Total Net Vehicles (8,029 / 10,113) | **79%** |

John Fox
Operations
EG&G TECHNICAL SERVICES, INC.
Supporting the Seizures and Penalties Division
Office of field Operations
U.S. Customs and Border Protection
Department of Homeland Security
703.361.3131 extension 245
703.361.3631 fax

Bill,

The costs are as follows per your request:

GFY2004
- $13,682,118
  - TX – $3,200,398
  - NM – No location established to track costs
  - AZ – $5,465,247
  - CA – $3,777,908

GFY2005
- $22,997,860
  - TX - $4,849,575
  - NM – No location established to track costs
  - AZ - $11,701,427
  - CA - $5,170,352

GFY2006
- 16,225,252
  - TX - $5,008,053
  - NM – No location established to track costs
  - AZ - $6,457,876
  - CA - $3,289,880
-

Theresa A. O'Neil
**Director, Financial Management**
**EG&G Technical Services, Inc.**
Supporting the Seizures and Penalties Division
Office of Field Operations
U.S. Customs and Border Protection
Department of Homeland Security
703 361-3131 extension 220
703 361-3631 Fax

-----Original Message-----
**From:** Calnan, William A [mailto:william.calnan@dhs.gov]
**Sent:** Wednesday, September 27, 2006 7:56 PM
**To:** O'Neil, Terri
**Cc:** Brown, William E
**Subject:** Vehicle Costs

Terri:

In addition, please provide the same vehicle cost information for the four SW Border states, TX, NM, AZ and CA. Due date teh same as below.

Tks
DCOTR

-----Forwarded by WILLIAM A CALNAN/NE/USCS on 09/27/2006 04:48PM -----

To: "O'Neil, Terri" <toneil@egginc.com>
From: WILLIAM A CALNAN/NE/USCS
Date: 09/27/2006 03:43PM
cc: WILLIAM E BROWN/NE/USCS@USCustoms, WILLIAM M STEVENS/NE/USCS@USCustoms
Subject: Vehicle Costs

Terri:
Per our phone discussion, please provide the total cost associated with seized and forfeited vehicle from the time of consignment to final disposition for FY 2004, 2005, and 2006. Please provide this information as soon as possible, but not later than 09:00 EST on September 28, 2006.
tks
BC
DCOTR